JN/ABS:EAG/SME/AE
F.# 2018R000733

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

   - against -

WESLEY BLAKE BARBER and
CHRISTOPHER WALKER,

          Defendants.

Cr. No. 19-239 (S-1) (RJD)

– – – – – – – – – – – – – – – – X

GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO
THE DEFENDANTS' MOTIONS FOR BRADY MATERIAL, PRE-TRIAL DISCLOSURES,
AN ORDER PURSUANT TO RULE 5(f), AND A BILL OF PARTICULARS

        MARK J. LESKO
        Acting United States Attorney
        Eastern District of New York

        DANIEL KAHN
        Acting Chief
        Fraud Section, Criminal Division
        United States Department of Justice

Elizabeth Geddes
Sarah Evans
Assistant U.S. Attorneys

Andrew Estes
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

    I.    BACKGROUND ............................................................................................................. 1

        A.    The Alleged Criminal Conduct..................................................................................... 1

        B.    The Charges in the Indictment and Superseding Indictment........................................ 3

        C.    Discovery Produced to Date ......................................................................................... 4

    II.    ARGUMENT ................................................................................................................... 5

        A.    The Government Has Complied and Will Continue to Comply with its Disclosure
Obligations ......................................................................................................................... 5

        B.    Early Disclosure of Witness and Exhibit Lists and 3500 Material is Unwarranted ..... 8

        C.    No Objection to Rule 5(f) Order................................................................................... 9

        D.    A Bill of Particulars Is Unnecessary............................................................................. 9

CONCLUSION.............................................................................................................................. 16


## TABLE OF AUTHORITIES

Page(s)

**Cases**

Brady v. Maryland, 373 U.S. 83 (1963) .................................................................................. passim
Giglio v. United States, 405 U.S. 150 (1972) ......................................................................... passim
United States v. Barret, 824 F. Supp. 2d 419 (E.D.N.Y. 2011) ......................................... 8, 10, 15
United States v. Bellomo, 263 F. Supp. 2d 561 (E.D.N.Y. 2003) ............................................... 11
United States v. Binday, 908 F. Supp. 2d 485 (S.D.N.Y. 2012) .................................................... 1
United States v. Carroll, 510 F.2d 507 (2d Cir. 1975) ................................................................. 15
United States v. Coppa, 267 F.3d 132 (2d Cir. 2001) ................................................................ 5, 8
United States v. GAF Corp., 928 F.2d 1253 (2d Cir. 1991) ........................................................ 10
United States v. Gotti, 784 F. Supp. 1017 (E.D.N.Y. 1992) ................................................. 10, 13
United States v. LeRoy, 687 F.2d 610 (2d Cir. 1982) .................................................................... 5
United States v. Levy, No. S5 11 Cr. 62 (PAC), 2013 WL 664712
    (S.D.N.Y. Feb. 25, 2013) .................................................................................................. 15
United States v. Mandell, 710 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................................ 14
United States v. Morgan, 690 F. Supp. 2d 274 (S.D.N.Y. 2010) ................................................... 6
United States v. Rittweger, 259 F. Supp. 2d 275 (S.D.N.Y. 2003) .............................................. 14
United States v. Shkreli, 15-CR-637 (KAM),
    2016 WL 8711065 (E.D.N.Y. Dec. 16, 2016) ............................................................. 5, 13
United States v. Sindone, No. 01 CR 517 MBM, 2002 WL 48604
    (S.D.N.Y. Jan. 14, 2002) ................................................................................................... 11
United States v. Walsh, 194 F.3d 37 (2d Cir. 1999) .................................................................... 10
United States v. Yu, No. 97 CR 102 (SJ), 1998 WL 57079 (E.D.N.Y. Feb. 5, 1998) ................. 10

**Statutes**

18 U.S.C. § 1346 ............................................................................................................................. 1
Fla. Stat. § 456.054 ........................................................................................................................ 1
Fla. Stat. § 817.505 ........................................................................................................................ 1

**Rules**

Fed. R. Crim. P. 5(f) .................................................................................................................. 1, 9

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the motion of the defendants Wesley Blake Barber and Christopher Walker (referred to collectively herein as the "defendants"): (1) to compel production of material under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, (2) to compel witness lists, exhibit lists and 3500 material 60 days before trial, (3) for an order pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure ("Rule 5(f)"), and (4) to compel a bill of particulars (ECF Nos. 92, 94, 95) (collectively, the "Motions").[1]  For the reasons set forth below, the Motions should be denied.

I.   BACKGROUND[2]

   A.   The Alleged Criminal Conduct

As alleged in the Superseding Indictment, the defendants, together with others, perpetrated a scheme that corrupted the doctor-patient relationship through bribes and kickbacks relating to surgeries in connection with multi-district litigation ("MDL") and other mass tort lawsuits related to transvaginal mesh ("TVM") implants.  Walker, a licensed urogynecologist, and others paid bribes and kickbacks to Barber and other so-called facilitators, in return for the referral of patients for TVM-removal surgeries, in violation of Florida's commercial bribery statute and depriving the patients of their right to their doctor's honest services.  See Fla. Stat. §§ 817.505 and 456.054; 18 U.S.C. § 1346.

Since 2008, manufacturers of TVM implants have been engaged in litigation relating to the use of TVM implants and the alleged harm that those implants caused.  Certain

---

[1] The government does not object to the Court entering the model Rule 5(f) order.

[2] The proffer contained herein is submitted for the purpose of aiding the Court in making its decision.  It is not a full proffer of the evidence the Government intends to present at trial. See United States v. Binday, 908 F. Supp. 2d 485, 490 (S.D.N.Y. 2012).

1

settlement agreements, including one termed the Master Settlement Agreement ("MSA"), provided that those women who had undergone TVM-removal surgeries were entitled to receive a larger settlement than those whose mesh insert remained implanted (i.e., was not surgically removed). Between approximately 2013 and 2016, the defendants participated in a scheme to profit from the terms of the MSA by arranging for and performing TVM-removal surgeries in connection with lawsuits against various TVM manufacturers.

Scheme participants identified and contacted women throughout the United States who had TVM implants, and defrauded them into undergoing removal surgeries and then commencing lawsuits against the TVM manufacturers. Specifically, the women were told false and fraudulent information concerning the need to have the TVM implant removed. For example, one woman reported that she received a telephone call informing her that the mesh implant she had was the subject of a recall and that it would cause her cancer. Another reported that she was told her implant was akin to a "ticking time bomb" inside of her. The women were also fraudulently told that they would need to travel out of state to get the mesh removed and would not be permitted to use their health insurance to cover medical expenses associated with the TVM-removal surgery. Finally, the women were not told that the surgeons performing the surgeries were paying bribes and kickbacks in exchange for referrals to those surgeons.[3]

These removal surgeries generally were financed (a) through loans secured by future financial awards from personal injury lawsuits ("Contingent Loans"), or (b) by companies who purchased the right to collect debts owed by the patients who had removal surgeries ("Medical Debts"). Some of these funding arrangements included agreements in which the

---

[3] The government does not intend to argue that any advice by surgeons concerning the medical necessity of the removal surgeries was fraudulent, except as to the undisclosed bribes and kickbacks.

2

women agreed to repay the costs of the removal surgery plus interest, which accrued at exorbitant rates, and in some arrangements, the women were responsible for the medical bills associated with the removal surgeries, even if they did not receive a settlement.

Barber used his own companies, including Surgical Assistance Inc. and Medical Funding Consultants LLC (the "Barber Entities"), to facilitate and coordinate removal surgeries and their financing. Once funding was secured, the defendants and others arranged for the victims to travel to undergo removal surgery (often traveling hundreds of miles and with very little consultation in advance of the surgery). For example, Jane Doe #1 and Jane Doe #3 traveled from the Eastern District of New York to Florida where Walker performed removal surgeries on them.

Finally, Walker paid a kickback to Barber for the referral of patients. These women were not informed about these bribes and kickbacks that had corrupted the physician-patient relationship.

    B.    <u>The Charges in the Indictment and Superseding Indictment</u>

On March 23, 2019, the defendants were charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; three counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of conspiracy to violate the Travel Act, in violation of 18 U.S.C. § 371; and one count of violating the Travel Act, in violation of 18 U.S.C. § 1952(a)(3)(A) (the "Indictment") (ECF No. 1). On December 12, 2019, the defendants were charged in a superseding indictment (the "Superseding Indictment") (ECF No. 31). The Superseding Indictment charged the defendants with the same counts as the original Indictment and also charged Walker with one count of attempted witness tampering involving his former accountant, Individual-1.

C.      <u>Discovery Produced to Date</u>

The government has provided discovery on a rolling basis following the return of the Indictment. The government has provided a cover letter describing the contents of each production, and the government has often produced documents in a searchable format or with a folder structure that described the documents contained in each folder so that defendants could more easily locate documents and focus their review efforts. These materials have included, among other things, patients' medical records, bank records, phone records, funding companies' records, travel records, as well as detailed search warrant affidavits. In addition, the government has gone beyond its disclosure obligations and provided defendants with early disclosure of certain potential Jencks Act material, such as transcripts of individuals who testified in civil depositions, as well as recordings of Individual-1. Moreover, the government repeatedly noted that the defendants should contact the government if they had any questions or concerns. On multiple occasions, the government has conferred with defense counsel to answer questions and discuss discovery-related issues.

In the Motions, defendants have noted the volume of the discovery in this case, totaling hundreds of thousands of pages. This volume is a result of the defendants' participation in a years-long, complex scheme that involved numerous individuals and companies, involving the underlying mass tort litigations, to funding companies and the defendants' own companies. The government has worked diligently to gather these records during its investigation and preparation of this case and has worked diligently to make this information available to the defendants in an organized fashion.

4

II.      ARGUMENT

    A.    The Government Has Complied and Will Continue to Comply with its Disclosure Obligations

The government is aware that it has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment," i.e., exculpatory or impeachment information under Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). See United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001). Similarly, the government is aware of its obligation to turn over Giglio material sufficiently in advance of trial that it can be put to effective use by defendants. See id. However, "[t]he rationale underlying Brady is not to supply a defendant with all the evidence in the [g]overnment's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the [g]overnment." United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982).

The government understands and is complying with its continuing obligations under Brady and its progeny, and, to the extent it comes across Brady material, it is disclosing it. This representation should be sufficient to deny the defendants' motions on this issue. See United States v. Shkreli, 15-CR-637 (KAM), 2016 WL 8711065, at *3 (E.D.N.Y. Dec. 16, 2016) ("courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to Brady where the Government has made such good faith representations") (collecting cases).[4]

---

[4] Walker assumes that because counsel for the defendant has identified purported impeachment material for a government witness (including the defendant's allegations of the witness's purported embezzlement and alteration of records), the government must be suppressing some unspecified information to which the defendant is entitled, and that the government has also failed to conduct an investigation of its own. Not only are such assertions speculative and logically inconsistent, they show that the defense already has such impeachment material in his possession

5

Walker specifically requests three categories of purported Brady or Giglio material: (1) "any impeachment" evidence or information concerning Walker's former accountant (i.e., Individual-1); (2) grand jury transcripts; and (3) materials from Funding Company-1. The defendant is not entitled to these materials at this time.

With respect to Walker's request for impeachment evidence relating to Individual-1 and grand jury transcripts, the government will provide any such information in advance of trial.[5] "[C]ourts in this Circuit have repeatedly refused to compel disclosure of impeachment or Giglio material well in advance of trial." United States v. Morgan, 690 F. Supp. 2d 274, 285-86 (S.D.N.Y. 2010) (government not required to produce Giglio material until it produces 3500 material, as long as it does so in time for effective use at trial). Similarly, the government will also produce in advance of trial transcripts of grand jury testimony by any of its witnesses, as required by the Jencks Act and Rule 26.2.[6] Walker's assertion that the government's grand jury presentation also contains Brady or Giglio appears to be based on pure speculation concerning what the defendant assumes "will likely reveal an ever-evolving narrative" involving a government witness (ECF No. 92-1 at 13). In any event, his speculation is wrong.

---

[5] The government has already provided to the defense well in advance of trial certain prior statements and potential impeachment materials concerning the defendant's former accountant and her interactions with Intuit/QuickBooks, including prior testimony in a civil deposition as well as audio recordings of the former accountant's communications with Intuit/QuickBooks.

[6] As the government informed defense counsel, outside of the government's disclosure obligations under Brady, Giglio, or the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2, the disclosure of matters before the grand jury was inconsistent with Rule 6(e) of the Federal Rules of Criminal Procedure.

The defendants' request for purported Brady material concerning Funding Company-1 (or other funding companies) is similarly speculative, as the defense simply assumes that Funding Company-1 must have disclosed some information to the government that exculpates the defendants. Significantly, the government has already produced extensive documents that it received from Funding Company-1, including spreadsheets of funded surgeries, financial records, funding contracts and e-mails of Funding Company-1's personnel. In any event, Walker's view as to what may be exculpatory from Funding Company-1 is misplaced. (See ECF No. 92-1 at 14-15 ("[I]f there is evidence resulting from government meetings with Funding Company-1 demonstrating that the procedures Dr. Walker performed were medically necessary, that the patients had all been represented by independent counsel, or that the risks of surgery or complexity of financing were disclosed, such evidence is material to Dr. Walker's guilt and thus per se exculpatory.")). The fraudulent scheme at issue is not premised on medical necessity. Rather, at the core of the wire fraud and Travel Act charges against Walker are the undisclosed bribes and kickbacks that Walker paid, directly and indirectly, for the referral of these patients, forming the basis of the state commercial bribery and honest services fraud. Even assuming, arguendo, that procedures performed by Walker were appropriate from a clinical perspective, that fact would have no bearing on the illegal nature of the kickbacks. Similarly, no potential benefits of removal surgery would cure the fact that the victims of the fraudulent scheme were deprived of the ability to make informed and financially responsible healthcare decisions through misrepresentations designed to line the defendants' and co-conspirators' pockets.

Similarly, Barber's request for various documents, reports and notes as purported Brady or Giglio is also over-expansive. See ECF No. 94 at 2-3 (requesting documents, notes and

7

reports of patients, doctors and lawyers concerning TVM lawsuits). Again, the government is aware of its obligations under Brady and Giglio. To the extent the government identifies any such information, the government will provide it accordingly. Otherwise, the government will provide interview reports or other materials consistent with 18 U.S.C. § 3500 and Rule 26.2 at the appropriate time. Barber's broad assertions that such materials must somehow contain Brady or Giglio are unfounded.[7]

  B.  Early Disclosure of Witness and Exhibit Lists and 3500 Material is Unwarranted

The Court "need not grant the defendant's motion [for disclosure of the government's trial witnesses] absent some specific showing that disclosure is both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case . . . ." See United States v. Barret, 824 F. Supp. 2d 419, 457 (E.D.N.Y. 2011) (internal quotation marks and brackets omitted). Walker has not established that such an early disclosure of witness or exhibit lists is material to the defense, but has merely relied on the general impact of COVID-19 and restrictions due to the defendant's conditions of release. And as to the early disclosure of witness statements, it is well-established that aside from Brady and Giglio material, the government can be required to produce a witness's statement under § 3500 only following the witness's direct examination. Coppa, 267 F.3d at 145-46 (district court exceeded its authority in scheduling order that covered witness statements that did not rise to the level of Brady or Giglio); United States v. Bielli, 697 F. Supp. 2d 403, 09-10 (E.D.N.Y. 2010) ("It is settled law that a court may not compel the production of Jencks Act materials which are not

---

[7] As noted above, the government's productions of discovery have already included civil deposition transcripts of some of the women who underwent TVM removal surgeries, among others.

8

otherwise discoverable under Brady or Giglio prior to a Government witness's testimony on direct examination.").

The government has already provided extensive discovery that already contains many prior statements of potential government witnesses, including prior civil deposition testimony and recorded conversations. Nonetheless, in the interest of broad disclosure and to avoid unnecessary delay at trial, the government intends to adhere to its typical practice of providing 3500 material at least two weeks in advance of trial. In addition, the government is also willing to discuss with defense a mutually agreeable pre-trial disclosure order for the parties to provide preliminary witness and exhibit lists, but in any event, the government intends to provide such materials at least two weeks before trial.

C. No Objection to Rule 5(f) Order

The government has no objection to the Court entering the Eastern District of New York's model order concerning Rule 5(f), reminding the government of its disclosure obligations under Brady and its progeny and to summarize possible consequences of such order.

D. A Bill of Particulars Is Unnecessary

The Court should deny the defendant's requests for particulars in light of the level of detail in the superseding indictment, the extensive, organized and searchable discovery produced significantly in advance of trial, and other comprehensive information disclosed by the government. Simply put, the particulars requested by the defendant are not necessary, but are instead improper attempts to obtain a pre-trial order of proof from the government or to limit the government's proof at trial. Nonetheless, in an effort to compromise, the government will provide the defendant with certain of their requests for particulars, namely the identities of certain anonymized entities and Jane Doe victims.

9

A bill of particulars is necessary only if the indictment is too vague to permit the defendant to be informed of the nature of the charges, to avoid unfair surprise and to determine if there are valid double jeopardy defenses. See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). If the information sought by a defendant otherwise is provided in the indictment or through some other means, a bill of particulars is not warranted. See United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he [g]overnment is not required to disclose additional details in a bill of particulars if a defendant has already been given adequate notice of the charges against him in the indictment or through discovery." United States v. Yu, No. 97 CR 102 (SJ), 1998 WL 57079, at *3 (E.D.N.Y. Feb. 5, 1998); see also Barret, 824 F. Supp. 2d at 438 (same).

In order to obtain a bill of particulars, defendants must establish why they need each of the particulars demanded and explain how the denial of each will prevent them from identifying the specific crimes with which they are charged. The ultimate test of the appropriateness of a bill of particulars is whether the information is necessary, not whether it is helpful to the defendant. See Barret, 824 F. Supp. 2d at 438. And "[i]n determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery." Id. (internal quotations omitted). Specifically, a bill of particulars is necessary "only if directed to curing defects in an indictment," in other words, only if it "clarifies the charges against the defendant." United States v. Gotti, 784 F. Supp. 1017, 1019 (E.D.N.Y. 1992) (emphases in original).

Notably, a bill of particulars is not designed to serve as an all-purpose pretrial investigative tool for defendants. "A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret

10

its evidence for the defendant, or disclose its legal theory." United States v. Bellomo, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003); see also United States v. Sindone, No. 01 CR 517 MBM, 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) ("[T]he device of a bill of particulars was not created to help the defendant investigate the charges in the indictment.  Rather, it is designed to avoid unfair surprise to the defendant at trial, and to permit the defendant to invoke the defense of double jeopardy.  Those are the only legitimate purposes of a bill of particulars.").  Thus, "courts generally deny requests for bills of particulars concerning the 'wheres, whens, and with whoms' of the crime." Bielli, 697 F. Supp. 2d at 409 (internal quotation marks omitted).

A bill of particulars is unnecessary here because the defendants have received extensive, organized discovery and detailed pre-trial disclosures.  Contrary to Walker's assertion, the government did not simply provide a "data dump" of discovery material.  (ECF No. 92-1 at 3, 22).  The government has produced discovery in an organized fashion, such as by providing materials in labeled folders or with bates numbers reflecting the source, and often in searchable format (particularly for voluminous electronic records such as e-mails).

In addition, the government has also provided defendants with detailed search warrant affidavits giving the defendants a preview of the government's case.  In particular, a 42-page affidavit sets out details of the scheme, including names of various individuals and entities involved and their general role in the scheme.  This affidavit further describes individuals' prior civil deposition testimony, along with transcript references and documents by specific bates numbers (testimony and documents that the government has already produced to the defendants). Moreover, the defendants have had this detailed affidavit for over a year.  (See ECF No. 38, Jan.

11

17, 2020 Letter).[8] Thus, a bill of particulars is unwarranted here. See United States v. Kazarian, No. 10 Cr. 895 (PGG), 2012 WL 1810214, at *25-26 (S.D.N.Y. May 18, 2012) (bill of particulars unwarranted where defendant received "an enormous amount of discovery material, including . . . wiretap and search warrant affidavits," which "materials provide [the defendant] with much of the information sought in the request for a bill of particulars," and had them for over a year). Because defendants have access to much of the requested information through the extensive discovery and detailed affidavit, a bill of particulars would only serve to unduly restrict the government's presentation of its case. See United States v. Barrera, 950 F. Supp. 2d 461, 477 (E.D.N.Y. 2013) ("Because a bill of particulars confines the Government's proof to particulars furnished, requests for a bill of particulars should not be granted where the consequence would be to restrict unduly the Government's ability to present its case." (quotation marks omitted)). Simply put, defendants have been provided more than ample discovery, guidance and time.

Walker demands particulars concerning three categories of requests, followed by 13 sub-categories of requests; Barber similarly demands particulars concerning various categories of requests, followed by multiple sub-categories. The government responds to the specific requests in turn below. A bill of particulars as to the requested information is unnecessary.

       1.     <u>Co-Conspirator Identities</u>

As referenced above, the search warrant affidavit identifies numerous individuals and companies involved in the charged scheme. This affidavit identifies such individuals and

---

[8] As to the charge of attempted witness tampering against Walker, the government also proffered additional factual details in connection with its motion to revoke the defendant's bond. (See ECF Nos. 33, 58).

12

entities by name, and describes the nature of their roles. Specifically, the affidavit identifies those involved in calling women to persuade them to undergo TVM-removal surgery, participants in the surgical funding, and those who paid bribes and kickbacks in exchange for patient referrals, including Walker). With that extensive level of detail already provided, a bill of particulars is not necessary to the preparation of the defense, but instead is simply an attempt to cabin the government's trial presentation or obtain a further preview of the government's evidence. See Gotti, 784 F. Supp. at 1019 (identification of co-conspirators was "better construed as a discovery request about evidentiary matters than as a motion for a bill of particulars"); Shkreli, 2016 WL 8711065, at *6 (denying particulars as to names of unindicted coconspirators where the defendant already had information allowing him "to prepare for trial and avoid surprise"). Accordingly, an order requiring such particulars is unwarranted.

2. Identities of Anonymized Entities

Defendants request disclosure of the identities of certain entities that were referenced anonymously in the Superseding Indictment: Company-1 and Company-2. Although the government has not heard of any difficulty by the defendants in identifying these entities through the discovery or search warrant affidavits provided to date, the government will identify Company-1 and Company-2 in a separate letter.[9] The remaining requests concerning these entities are improper requests for evidentiary details to which defendants are not entitled. (See,

---

[9] The defendant also requests the identities of "Funding Company-1" and "Funding Company-2." (Motion at 2). The Superseding Indictment uses the shorthand of "Funding Company-1" as Company-1 and its affiliates and "Funding Company-2" as Company-2 and its affiliates. As the government is separately identifying "Company-1" and "Company-2" no further particulars are necessary. To the extent the defendant is asking the government to particularize each and every affiliate, such detail is unnecessary.

13

e.g., ECF No. 92-1 at 23 (demanding particulars of the "nature of [entities'] relationship," and the "dates of their relationship" with Walker, the "individual transactions or communications")).

### 3. Jane Doe Identities

Both defendants request the government specifically identify Jane Doe #1, Jane Doe #2 and Jane Doe #3. The government will provide such information in a separate letter. Accordingly, a bill of particulars is unnecessary.

Walker further demands a bill of particulars identifying all victims by name, but such information is not necessary to understand the nature of the government's evidence concerning the crimes of which he is accused. See, e.g., Barrera, 950 F. Supp. 2d at 478 ("[T]he [g]overnment need not disclose the names of the murder conspiracy's intended victims in order for Defendant to be adequately apprised of the specific crimes of which he is accused."); United States v. Mandell, 710 F. Supp. 2d 368, 384-85 (S.D.N.Y. 2010) (denying requested bill of particulars for names of defrauded investors as "simply a request to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars"). In any event, the government has produced documents that identify patients who were subjected to the removal surgeries and how those surgeries were funded and by what entities; accordingly, a bill of particulars is unnecessary. See United States v. Rittweger, 259 F. Supp. 2d 275, 292 (S.D.N.Y. 2003) (denying bill of particulars requesting identities of all victims in addition to three already identified based in part on government's disclosure of transactional documents that defendants could use to identify the victims).

### 4. Remaining Requests

Defendants' remaining requests are simply demands for evidentiary minutiae that are inappropriate in a bill of particulars. (See, e.g., ECF No. 95 at 4 (request for various

14

particulars concerning "communications; business arrangements; and/or payments with Mr. Barber or any of Mr. Barber's entities"); ECF No. 92-1 at 24 (request for particulars concerning "the removal surgeries and any other services . . . including dates and locations," the "[d]ates and alleged nature of any communications" between the Jane Does and Walker; "[d]etails of any financial transaction between Dr. Walker and any of these three Jane Doe individuals"). Indeed, generally the government is not even required to "disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge." United States v. Carroll, 510 F.2d 507, 508-09 (2d Cir. 1975). Most of this information is not necessary to defend against the charges in the indictment, the core of which is the corruption of the doctor-patient relationship through bribes and kickbacks contrary to state commercial bribery law and patients' right of honest services of their physicians. Additional information, like "each specific misrepresentation and omission alleged" is "the very type of evidentiary minutiae that is not appropriate in a bill of particulars." See United States v. Levy, 2013 WL 664712, at *13 (S.D.N.Y. Feb. 25, 2013); see also Barret, 824 F. Supp. 2d at 439.

## CONCLUSION

For the foregoing reasons, the defendants' Motions should be denied.

Dated: Brooklyn, New York
March 29, 2021

                              Respectfully submitted,

                              MARK J. LESKO
                              Acting United States Attorney
                              Eastern District of New York

By:          /s/
                              Elizabeth Geddes
                              Sarah Evans
                              Assistant U.S. Attorneys
                              Eastern District of New York


                              DANIEL KAHN
                              Acting Chief
                              Fraud Section, Criminal Division
                              United States Department of Justice

By:          /s/
                              Andrew Estes
                              Trial Attorney
                              Criminal Division, Fraud Section
                              U.S. Department of Justice